FILED
CLERK, U.S. DISTRICT COURT

08/20/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: ___AP___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

March 2025 Grand Jury

| UNITED STATES OF AMERICA, | ED CR No. 5:25-cr-00277-AB |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v.<br>JOSE ENRIQUE TORRES,<br>Defendant. | [18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1956(a)(1)(B)(i): Concealment Money Laundering; 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

### COUNT ONE THROUGH SIX

[18 U.S.C. § 1343]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this indictment:

Defendant and Hub Group, Inc.

1.   Defendant JOSE ENRIQUE TORRES was the Vice President for the Western Region of Hub Group, Inc. ("Hub"), or he was a Terminal Manager for Hub.

2.   Defendant TORRES resided in Riverside County.

3.   Hub was a public company headquartered in Oak Brook, Illinois, providing transportation and logistics services.

4.   Hub operated trucking terminals in Bloomington, California, and Huntington Park, California.

5.   Defendant TORRES controlled accounts held in his own name ending in 4657 and 5121 at a branch of Bank of America located in Arizona.

6.   Defendant TORRES controlled accounts held in his own name ending in 5815 and 8553 housed with Bank of America in California.

7.   Defendant TORRES controlled an account held in his own name ending in 6327 housed with JP Morgan Chase ("Chase") bank in California.

8.   WEX Inc. ("Wex") was a provider of payment processing and information management services.

<u>EFS Checks</u>

9.   Hub utilized a Wex service called "EFS checks."

10.  EFS checks were backed with guaranteed funds, like a cashier's check.

11.  EFS checks were not automatically negotiable; they required a unique code, called a "money code," to be generated and written on the EFS checks before they could be negotiated.

12.  Hub commonly used EFS checks to pay vendors who provided on-site services, such as loading or unloading cargo, or towing or repair services; these services were often called "lumping" services because the loaders and unloaders were called "lumpers."

13.  Many Hub employees had access to the EFS checks, but only certain office staff, including defendant TORRES, had access to a Wex

application called E-Manager, which enabled the office staffer to generate a money code.

14. In generating a money code through E-Manager, Hub employees would enter the payee name for the check, the amount of the check, and details for the work performed, such as truck load, driver name, and trip number.

15. The servers that Wex used to process the E-Manager generated requests for a money code were located outside of the State of California.

B. SCHEME TO DEFRAUD

16. Beginning in or about August 2023, and continuing until at least in or about January 2025, in San Bernardino, Riverside, and Los Angeles Counties, within the Central District of California, and elsewhere, defendant TORRES, knowingly and with intent to defraud, devised, participated in, executed, and attempted to execute a scheme to defraud Hub as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

C. MEANS TO ACCCOMPLISH THE FRAUDULENT SCHEME

17. The fraudulent scheme operated in substance, as follows:

    a. Defendant TORRES entered false information into E-Manager concerning lumper transactions which did not actually occur to obtain a money code for an EFS check, and he would provide his subordinates with the false information and direct them to generate the money code and provide it to him.

    b. Defendant TORRES obtained a blank EFS check issued by Wex to Hub, and wrote, or caused to be written, the money code and

other transactional information on the check, including the amount of the check.

   c. Defendant TORRES wrote, and caused to be written, either his name or the name of an actual service provider to Hub as the payee on the check.

   d. Defendant TORRES deposited, and caused to be deposited, the fraudulently obtained EFS check into a Bank of America account ending in numbers 4657, 5121, 5815, or 8553.

  18. In total, as a result of his scheme defendant TORRES obtained and deposited approximately 2,149 EFS checks with a total value of approximately $1,398,852, to which he knew he was not entitled.

D. <u>USE OF WIRES</u>

  19. On or about the following dates, in San Bernardino County, within the Central District of California, and elsewhere, defendant TORRES, and others known and unknown to the Grand Jury, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission of the following items by means of wire communication in interstate commerce:

| COUNT | DATE | WIRE TRANSMISSION |
|---|---|---|
| ONE | September 5, 2023 | Defendant TORRES submitted lumper information into E-Manager, resulting in the issuance of a money code ending in 7168 |
| TWO | August 13, 2024 | M.C. submitted lumper information provided by defendant TORRES into E- |

| | | Manager, resulting in the issuance of a money code ending in 0274 |
|---|---|---|
| THREE | September 25, 2024 | M.U. submitted lumper information provided by defendant TORRES into E-Manager, resulting in the issuance of a money code ending in 8186 |
| FOUR | October 1, 2024 | B.V. submitted lumper information provided by defendant TORRES into E-Manager, resulting in the issuance of a money code ending in 3674 |
| FIVE | November 11, 2024 | B.V. submitted lumper information provided by defendant TORRES into E-Manager, resulting in the issuance of a money code ending in 4367 |
| SIX | January 3, 2025 | N.A. submitted lumper information provided by defendant TORRES into E-Manager, resulting in the issuance of a money code ending in 1456 |

COUNT SEVEN

[18 U.S.C. § 1956(a)(1)(B)(i)]

20. The Grand Jury realleges paragraphs one through nineteen of this Indictment here.

21. On or about January 29, 2025, in Riverside County, within the Central District of California, and elsewhere, defendant TORRES knowingly conducted a financial transaction affecting interstate commerce, involving the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that property involved in such financial transaction represented the proceeds of some form of unlawful activity and knowing that the financial transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of such proceeds, namely, defendant TORRES obtained a cashier's check in the amount of $403,143.26 from his Bank of America account ending in 8553, and he deposited the cashier's check in his Chase account ending in 6327.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts One through Six of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses including but not limited to the real property located at 35256 Lilac Lane, Cherry valley, California, Assessor's Parcel Number 400-780-024; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

7

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982(a)(1)]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of the defendant's conviction of the offense set forth in Count Seven of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

   (a) Any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to the real property located at 35256 Lilac Lane, Cherry valley, California, Assessor's Parcel Number 400-780-024; and

   (b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.  Substitution of assets shall not be

ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

A TRUE BILL

/S/
Foreperson

BILAL A. ESSAYLI
Acting United States Attorney

*Christina Shay*

CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division

PETER DAHLQUIST
Assistant United States Attorney
Chief, Riverside Branch Office

SEAN D. PETERSON
Assistant United States Attorney
Riverside Branch Office